***********
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Ledford and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission AFFIRMS the Opinion and Award of Deputy Commissioner Ledford.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and subject to the terms of the Workers' Compensation Act, and the Commission has jurisdiction over the parties and the subject matter.
2. The plaintiff was an employee of defendant-employer.
3. Hartford Insurance is the workers' compensation carrier for the employer.
4. The parties stipulated into evidence, without need for further authentication or verification, medical records, identified as Stipulated Exhibit 1.
5. The parties stipulated into evidence, without need for further authentication or verification, plaintiff's responses to defendants' First Set of Interrogatories and Request for Production of Documents, as Stipulated Exhibit 2.
6. The parties stipulated into evidence, without need for further authentication or verification, a completed Form 22 wage chart with attached pay record and time cards, as Stipulated Exhibit 3.
7. The parties stipulated into evidence, without need for further authentication or verification, 4 pages of documents, entitled "Employee Notes" which are attendance/absence records, as Stipulated Exhibit 4.
8. The parties agreed at the hearing to stipulate into evidence, without need for further authentication or verification, records from AFLAC that were being requested by plaintiff's attorney after the hearing before the Deputy Commissioner. Subsequent to the hearing, in response to a discovery motion from Defendants, by Order filed Oct. 28, 2003, the Deputy Commissioner ordered the production of the AFLAC records.
9. A set of AFLAC records was produced by AFLAC directly to the Deputy Commissioner, and was received on January 20, 2004. The Deputy Commissioner provided the parties with a copy of these records on March 9, 2004. Those records have been received as evidence, over any objection of plaintiff.
10. The parties stipulated into evidence, without need for further authentication or verification, correspondence from plaintiff to Orthopedics East, that was attached as an exhibit to Dr. Harvell's deposition.
 ***********
Based upon the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 48 years old. He obtained his GED High School Equivalency Diploma.
2. Plaintiff worked for defendant-employer as a machinist and heavy equipment mechanic. At the hearing before the Deputy Commissioner, plaintiff testified that he repaired "everything that came in the door" including bulldozers, cranes, and backhoes.
3. At the hearing before the Deputy Commissioner, plaintiff testified about two incidents at work. First, he said that the day before his onset of back pain, on or about September 24, 2001, he had machined a large circular plate about 18 inches wide, 1 inch thick and about 80 pounds. He testified that he did not have an onset of pain that day or that night, but when he woke up the next day his back was "sore" and he "assumed" it was from his work the day before. However, he said he was able to function and he went to work as usual.
4. Plaintiff also testified before the Deputy Commissioner that apparently the next day, while working at PCS, a large mining operation for whom defendant-employer performed work, he was asked by the shop foreman named "Sarge" to load some parts that needed to be repaired at the machine shop. Plaintiff stated that he used a crane to lift and load a "D-10 major bogie" into the back of his truck; that he stood the bogie on its end and then manually re-positioned it in the truck so that it would not fall over during the ride back to the shop. He claims that while re-positioning the bogie, he injured his back. There were no witnesses present.
5. Mitchell Woolard, plaintiff's supervisor, was not present when plaintiff was allegedly moving the bogie, but Mr. Woolard's testimony at the hearing before the Deputy Commissioner confirmed that a crane would be used to load the bogie into the truck. However, Mr. Woolard would expect it to be positioned in the truck differently than plaintiff testified, and would not expect that it would be necessary for plaintiff to try to manually reposition the bogie.
6. At the hearing before the Deputy Commissioner, Mr. Woolard recalled that on the morning of September 25, 2001, plaintiff mentioned that his back was hurting, although he did not report a work injury. Plaintiff left the machine shop to "evaluate" a job. When plaintiff returned to the shop later that afternoon, he said he was leaving to go to the doctor, and that his back hurt. However, plaintiff but did not tell Mr. Woolard that he had injured his back at work. Mitchell Woolard acknowledged that plaintiff was a good and dependable employee. However, he could not confirm plaintiff's testimony that he injured himself at work.
7. Plaintiff presented to Dennis Czuchra, a physician's assistant, at the Washington Family Medical Center on September 25, 2001, with complaints of severe low back pain. Plaintiff gave a history that he awoke with right-sided lower back pain with radiation to the right hip. He did not give a history of an injury at work. Plaintiff returned to the Washington Family Medical Center on September 27, 2001, and reported that the pain was "no better." No work injury was mentioned on this visit or at any of the other visits or phone calls to this facility.
8. On October 24, 2001, plaintiff presented to Dr. James C. Harvell, an orthopedic specialist with Orthopedics East. When plaintiff registered at Dr. Harvell's office, he did not indicate that it was a workers' compensation claim. Also, during his intake interview at the front desk, plaintiff did not indicate that he was being seen for a work related injury. Plaintiff related a history to Dr. Harvell that about six months prior he was involved in an accident using a riding lawn mower, and that when he woke up on the morning of September 25, 2001, he could not get out of bed and had sudden redevelopment of low back pain to the extent that he could not stand erect.
9. Dr. Harvell examined plaintiff and ordered x-rays, which showed moderately severe degenerative changes at L3-4, L4-5, and L5-S1, as well as a possible pars defect at L5 with no evidence of spondylolisthesis. Dr. Harvell assessed plaintiff with moderately severe degenerative disc disease at L3-4, L4-5, and L5-S1, as well as a spondylolisthesis deformity involving the lowest motion segment L5/S1, often called a Pars Defect. In his deposition testimony, Dr. Harvell defined spondylolisthesis as "a non-union of the Pars Interarticularis area, which he explained is an anatomical bridge between the facet joints." Dr. Harvell stated that spondylolisthesis is typically asymptomatic for a number of years and then at some point symptoms can be triggered by a relatively minor trauma.
10. Dr. Harvell initiated a course of conservative treatment, including physical therapy at Beaufort County Hospital. On October 30, 2001, the physical therapist took the following history from plaintiff: "Started in April — was on a riding lawn mower — it jerked out from under him — hit his back on the back of the seat. Got over that in 1-2 months. On 9-25-01 got up and couldn't get out of bed."
11. On this first visit for physical therapy, plaintiff also completed an intake sheet as part of the registration process. At the bottom of the form, the following is stated in boldface type: "If this is workers' comp. please write in information below if available, if this is not available please give me the contact person at your place of employment with their telephone number." Plaintiff left this portion of the form blank.
12. Plaintiff had purchased supplemental insurance from American Family Life Assurance Company of Columbus (AFLAC). The records from AFLAC show that plaintiff filed a claim for benefits on January 30, 2001, due to the incident when he was "working on a lawn mower at home" and "it jerked." Plaintiff missed some work and received benefits from AFLAC.
13. Mitchell Woolard, plaintiff's supervisor, recalls that plaintiff missed some time from work as a result of the lawn mower incident earlier in the year, and testified that from time to time plaintiff's back would bother him after that incident.
14. There are inconsistent claim forms contained in the plaintiff's AFLAC file. In October 2001, plaintiff filed a claim for disability benefits saying that he was injured on or about September 4, 2001, "getting out of bed." Another disability claim form filed with AFLAC in October was for "disability due to sickness" and plaintiff indicated that symptoms began on September 25, 2001, and that he had a similar condition on January 29, 2001. Plaintiff's claim was thereafter denied by AFLAC.
15. On November 1, 2001, and again on November 5, 2001, plaintiff sent via facsimile transmission to Orthopedics East, correspondence he had drafted to AFLAC in an attempt to convince AFLAC that it should not have denied his claim for disability. This correspondence goes into great detail about plaintiff's condition and the potential causes for his exacerbation of symptoms. While plaintiff does mention the previous lawn mower incident as well as a sneeze, wrong move or simply rising out of bed as potential causes, he does not mention an injury at work.
16. On or about November 6, 2001, plaintiff sent a letter via facsimile transmission to AFLAC in response to its denial of his claim. This is the same letter that plaintiff had sent to Dr. Harvell's office and is attached as an exhibit to Dr. Harvell's deposition. It is also a part of the AFLAC records. On or about November 7, 2001, AFLAC indicated that it needed a statement from plaintiff's doctor giving complete details as to how the accident occurred.
17. On or about November 12, 2001, plaintiff filed another claim with AFLAC and alleged that he injured his back due to an accident at work on September 25, 2001. On November 13, 2001, AFLAC paid plaintiff disability benefits from September 25, 2001, to October 15, 2001. On November 14, 2001, AFLAC paid plaintiff disability benefits from October 16, 2001, to November 12, 2001.
18. On November 21, 2001, plaintiff returned to see Dr. Harvell. Plaintiff again did not report any history of a work injury. Dr. Harvell noted upon examination that plaintiff remained "unchanged" although he also noted "reasonable improvement" from his back pain.
19. On December 21, 2001, plaintiff reported to defendant-employer for the first time that he had a work injury at PCS on September 25, 2001. He did this by calling Pam Jones, Executive Assistant, who immediately completed a Form 19, Employer's Report of Injury, and provided it to the workers' compensation carrier, The Hartford, who then denied liability for this claim.
20. On January 16, 2002, plaintiff sent, via facsimile transmission, a two-page letter to Orthopedics East regarding his desire to have further diagnostic studies performed. In this letter, plaintiff, for the first time, reported to his treating physicians that his condition was related to an injury at work on September 25, 2001. He claimed that defendants had not filed the claim in a timely manner, although there is no record that he had ever mentioned it to defendants prior to December 21, 2001. Plaintiff also noted that his medical records did not mention "any initial trauma" which he complained would cause "a problem with the insurance company." He requested that the physicians include in his record "a brief statement explaining the initial cause of my pain."
21. The Full Commission finds that the plaintiff has made various inconsistent statements to medical providers and to AFLAC regarding the alleged cause and onset of his back pain. He never reported the alleged accident to defendants until he had problems with the pending AFLAC claim. In view of this history, plaintiff's testimony and the statements in his January 16, 2002, letter to Orthopedics East concerning the alleged September 25, 2001, injury by accident, are not credible.
22. While Dr. Harvell is deemed to be a competent and credible witness, given that plaintiff's testimony about the injury by accident is not credible, any opinions formed and attested to by Dr. Harvell regarding any cause or aggravation of plaintiff's back condition are not competent in this situation, as they rely upon an erroneous history provided by plaintiff.
23. The Full Commission finds that the plaintiff has made misrepresentations and has pursued this case without reasonable grounds.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff has failed to establish that he sustained a compensable injury by accident or specific traumatic incident arising out of and in the course of his employment on or about September 25, 2001. N.C. Gen. Stat. §97-2(6). Plaintiff's testimony to the contrary is rejected as not credible.Anderson v. Northwestern Motor Co., 233 N.C. 372, 65 S.E.2d 265 (1991).
2. Considering the history of this case, it appears that plaintiff has made misrepresentations and has pursued this case without reasonable grounds. As a sanction, the costs of this action, including the expert witness fee of $500 for Dr. Harvell, are assessed against plaintiff. In order to insure payment to Dr. Harvell without need of further Commission intervention, defendants shall pay the expert witness fee, and may then seek reimbursement from plaintiff. The Commission shall bill plaintiff the costs of this action. The Full Commission declines to order further sanctions or attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the undersigned enters the following
 AWARD
1. Under the law, plaintiff's claim must be and is hereby DENIED.
2. Plaintiff shall pay the cost of this claim, including the expert witness fee of $500 to Dr. Harvell. Defendants shall pay Dr. Harvell's fee and may then seek reimbursement from plaintiff.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER